## State of Connecticut *v.* Carlos Maldonado
### (4673)

Borden, Daly and O'Connell, Js.

Argued October 6, 1987—decision released February 2, 1988

*Eugene J. Riccio, Jr.,* special public defender, with whom, on the brief, were *Brian S. Carlow,* assistant public defender, and *Susan M. Cococcia,* deputy assistant public defender, for the appellant (defendant).

*Linda N. Knight,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction of two counts of risk of injury to a minor, in violation of General Statutes § 53-21. The charges stemmed from the sexual abuse of the defendant's son, C, and daughter, R, ages six and three and one-half respectively, at the time of the crimes. The defendant claims the trial court erred (1) in admitting hearsay testimony regarding R's identification of the defendant as her assailant, (2) in determining that the defendant's son was competent to testify, and (3) in its instruction to the jury on circumstantial evidence. We find no error.

The jury could reasonably have found the following facts. On the evening of October 29, 1984, the defendant brought R, who spoke only Spanish, to the emergency room at Danbury Hospital, suffering from a copious vaginal discharge. Such an abnormal discharge suggested two potential causes: a foreign body within the vagina causing an infection; or venereal disease, particularly gonorrhea. Attempts at an examination to determine whether a foreign body was present were inconclusive, and tests for gonorrhea required forty-eight hours to render conclusive results. The defendant took the child home before the cause of the discharge could be determined but brought her back the following evening. Upon R's return to the hospital, the examining physician enlisted the aid of a Spanish-speaking security guard to take R's medical history.

Out of the presence of the defendant and the doctor, R indicated to the security guard, without speaking but by nodding her head, that she had not placed foreign objects inside her body, that she had been molested and that the molesting individual was her father. The security guard attempted to have the child

repeat her responses in the presence of the treating physician but she refused. The defendant ultimately agreed to admit R to the hospital that night. The culture taken from R tested positive for a strain of gonorrhea for which the defendant had been treated only two days earlier.

The trial court found that R was unavailable to testify because she had stopped responding to questions regarding the relationship with her father and as the trial approached, began to experience nightmares and incidents of vomiting. At trial, the hospital security guard testified concerning his conversation with the child.

After a hearing on the issue of competency, the court allowed C, the defendant's son, to testify. C testified that the defendant had sexually molested both children.

I

The defendant first claims that the trial court erred in allowing into evidence R's nonverbal "statements" identifying him as her assailant. He claims that the admission of this hearsay evidence was both an erroneous evidentiary ruling and a violation of his right of confrontation under both the state and federal constitutions.[1] We disagree.

A

The state contends that R's identification of her father as her assailant falls within three exceptions to the hearsay rule: (1) as a statement made for purposes of medical treatment or diagnosis; (2) as an excited

[1] Although the defendant makes his claim under both article first, § 8 of the constitution of Connecticut and the sixth and fourteenth amendments to the United States constitution, "he offers no separate analysis of the Connecticut constitution as a basis for different treatment of the federal and state constitutional claims. We decline to undertake such analysis." State v. Foshay, 12 Conn. App. 1, 14 n.10, 530 A.2d 611 (1987).

utterance; and (3) as a statement which is admissible under the residual hearsay exception. We find the statement admissible under the first of the three exceptions and need not determine whether the remaining exceptions apply.

Connecticut recognizes nonverbal communications as hearsay statements. *Hine et al., Appeal from Probate,* 68 Conn. 551, 557–58, 37 A.2d 384 (1897); C. Tait & J. LaPlante, Connecticut Evidence (1986 Sup.) § 11.2, pp. 146–47. Connecticut also recognizes a long standing exception to the hearsay rule which allows into evidence statements made by a patient to a physician for the purpose of obtaining medical treatment. *Brown* v. *Blauvelt,* 152 Conn. 272, 274, 205 A.2d 773 (1964); *Gilmore* v. *American Tube & Stamping Co.,* 79 Conn. 498, 504, 66 A. 4 (1907); B. Holden & J. Daly, Connecticut Evidence (1988 Sup.), § 100c, p. 985; Tait & LaPlante, supra. This case requires us to determine (1) whether the "statements" made by R fall within the medical treatment exception to the hearsay rule, and (2) whether such statements which actually identify an assailant are admissible under that same exception.

Federal Rule of Evidence 803 (4), which is virtually identical to the rule established in Connecticut case law, has given rise to a line of cases making the exception applicable to cases involving physical or sexual abuse of children.[2]

---

[2] Federal Rule of Evidence 803 (4) provides: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . (4) Statements for purposes of medical diagnosis or treatment—Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

We note also that although under the federal rule, a witness' unavailability need not be proven for the exception to apply, the trial court found that R was in fact unavailable.

The court in *United States* v. *Iron Shell,* 633 F.2d 77 (8th Cir. 1980), utilized a two part test to determine whether hearsay statements should have been admitted under the medical treatment exception. "First, [was] the declarant's motive consistent with the purpose of [obtaining medical treatment]; and second, [was] it reasonable for the physician to rely on the information in diagnosis or treatment." Id., 84. Such a test ensures that the information being allowed into evidence was rendered with a guarantee of trustworthiness sufficient to justify an exception to the hearsay rule.

Both criteria are satisfied in the present case. R, the young abuse victim, was told by the Spanish-speaking security guard that he was questioning her to aid in the doctor's treatment. The security guard testified that R understood what she was being told. She was aware that she had a problem that needed medical attention, and was not coached as to expected replies. There is no indication that R's responses were motivated by any reason other than the need for treatment.

As to the second prong of the *Iron Shell* test, the information sought was relevant to treatment and was reasonably relied upon by the treating physician. Given the limited number of potential causes for R's infection, the uncertainty of the diagnosis at the time of R's questioning and the absence of other possible sources of infection, it was reasonable for the treating physician to rely upon the information gleaned from R's conversation with the security guard.

While statements regarding causation or identification are not generally allowed into evidence under the medical treatment exception to the hearsay rule; see Tait & LaPlante, supra, § 11.12c; the United States Court of Appeals for the Eighth Circuit has carved an exception out of this restriction which we adopt today.

In *United States* v. *Renville,* 779 F.2d 430 (8th Cir. 1985), the court applied the medical treatment exception to the identification by an eleven year old sexual assault victim, of her stepfather as her abuser. While acknowledging that the court in *United States* v. *Iron Shell,* supra, found that statements to a treating physician regarding identity of an assailant " 'would seldom, if ever' be reasonably pertinent to treatment or diagnosis"; *United States* v. *Renville,* supra, 436, quoting *United States* v. *Iron Shell,* supra, 84; the *Renville* court made an exception for cases in which the party being identified as the assailant in a sexual abuse case was a member of the victim's household: "We believe that a statement by a child abuse victim that the abuser is a member of the victim's immediate household presents a sufficiently different case from that envisaged by the drafters of rule 803 (4) [so] that it should not fall under the general rule. Statements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household *are* reasonably pertinent to treatment." (Emphasis in original.) *United States* v. *Renville,* supra, 436.

The *Renville* rationale applies in the present case. First, the injury in question is not purely somatic. It is beyond dispute that child abuse results in emotional and psychological, as well as physical, injury. An aspect of these less apparent, but equally devastating forms of injury, may be directly linked with the identity of the abuser. While the identity of a party causing an injury is rarely germane to medical treatment, "the exact nature and extent of psychological problems which ensue from child abuse often depend on the identity of the abuser." *United States* v. *Renville,* supra, 437. "The psychological sequelae of sexual molestation by a father, other relative, or family friend may be different and require different treatment than those

resulting from abuse by a stranger. . . . Furthermore, effective treatment may require that the victim avoid contact with the abuser, not just to prevent further abuse, but also to facilitate recovery from past abuse." (Citations omitted.) *State* v. *Robinson,* 153 Ariz. 191, 200, 735 P.2d 801, 810 (1987). In the present case, the fact that R's abuser was her father could have had untold adverse emotional and psychological effects, subject to successful diagnosis and treatment only with the physician's knowledge of the assailant's identity.

Second, although a statement regarding fault is not ordinarily relevant to prevention of recurrence, in cases of sexual abuse in the home, there is a direct correlation between identity and recurrence. Because child abuse cases often reveal a pattern of continued abuse, information regarding identity is often necessary to diagnose the extent and likelihood of further harm to the victim. *United States* v. *Renville,* supra.

"Information that the abuser is a member of the household is therefore 'reasonably pertinent' to a course of treatment which includes removing the child from the home." Id., 438. We therefore conclude that in cases of sexual abuse in the home, hearsay statements made in the course of medical treatment which reveal the identity of the abuser, are reasonably pertinent to treatment and are admissible.[3]

## B

The defendant also claims that the admission of the hearsay statements violated his constitutional confron-

---

[3] The fact that R's nonverbal communications were made to a security guard and not directly to the treating physician does not change our holding in this case. The comments of the advisory committee on the Federal Rules of Evidence provide that "[u]nder the exception the statement need not have been made to a physician. Statements to *hospital attendants,* ambulance drivers or even members of the family ought be included." (Emphasis added.) Fed. R. Evid. 803 (4), advisory committee's note. We also note that neither the defendant nor the state has addressed this aspect of the issue in their briefs.

tation rights. The existence of numerous exceptions to the hearsay rule indicate that the right to confrontation is not absolute under all circumstances. *State* v. *Jarzbek,* 204 Conn. 683, 695, 529 A.2d 1245 (1987). The U.S. Supreme Court holds that dispensing with in-court confrontation is permitted if two conditions are met: (1) if the declarant's in-court testimony is unavailable, and (2) if the declarant's out-of-court statement bears adequate "indicia of reliability." *Ohio* v. *Roberts,* 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). The trial court properly found that R was unavailable to testify because of severe and repeated adverse physical and psychological reactions to attempts to prepare her for trial. In *Roberts,* the U.S. Supreme Court also held that the second prong of the test, the indicia of reliability, "can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Ohio* v. *Roberts,* supra. This second requisite is satisfied by our conclusion that R's "statements" to the security guard fall within the medical treatment exception to the hearsay rule. See *State* v. *Robinson,* supra (statement of five-year old sexual abuse victim to physician regarding abuse and the identity of her abuser admissible under Fed. R. Evid. 803 (4) and, therefore, not a violation of the confrontation clause). "We note, moreover, that the [United States] Supreme Court has construed the confrontation clause in a pragmatic fashion, recognizing the need to balance the rights of the accused against the public's 'strong interest in effective law enforcement.' *Ohio* v. *Roberts,* [supra, 64]. *That interest is nowhere stronger than in the case of defenseless child abuse victims.* " (Emphasis added.) *United States* v. *Dorian,* 803 F.2d 1439, 1447 (8th Cir. 1986). Applying the protections established by the United States Supreme Court to the facts of the present case, we conclude that the admission of R's

communications did not violate the defendant's confrontation rights.

## II

The defendant next assigns error to the trial court's determination of C's competency to testify.[4]

It is beyond dispute that the age of a witness is not the decisive factor in determining his competency; *State* v. *Stankowski,* 184 Conn. 121, 139, 439 A.2d 918 (1981); and that this determination is a matter in which the trial court is granted substantial discretion. *State* v. *Martin,* 189 Conn. 1, 9, 454 A.2d 256, cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983). A trial court's ruling will be disturbed only upon a finding of clear abuse of that discretion or an error of law. *State* v. *Barkal,* 8 Conn. App. 313, 315, 512 A.2d 972, cert. denied, 201 Conn. 812, 517 A.2d 630 (1986). Our review of the record in the present case indicates no abuse of discretion or error of law. The trial court's unusually thorough inquiry was more than adequate for its evaluation of the child's maturity and its effect on his ability to receive accurate sensory impressions, to recall and narrate events and the subject matter of his testimony, and to appreciate the moral duty to tell the truth. See *State* v. *Barkal,* supra. The trial court's determination that C was competent to testify was therefore proper.

## III

The defendant's final claim of error concerns the trial court's jury instruction regarding circumstantial evidence. The defendant alleges that the instruction impermissibly diluted the state's burden of proving beyond

[4] This case was tried before the effective date of Public Acts 1985, No. 85-587 which amended General Statutes § 54-86h, substantially altering child witness competency determinations in cases where a "child . . . is a victim of assault, sexual assault or abuse . . . . "

a reasonable doubt, each essential element of the offenses charged, because it stated that an inference to be drawn need only be reasonable and logical. The defendant alleges the charge should have also required the jury to find that any inference drawn be established beyond a reasonable doubt.[5]

Despite the defendant's failure to object or take exception to the instruction, we will review the claim, "because it implicates the fundamental constitutional right that the state prove the guilt of an accused beyond a reasonable doubt." *State* v. *Silano,* 204 Conn. 769, 772, 529 A.2d 1283 (1987); *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

Our disposition of this issue is controlled by the holding in *State* v. *Silano,* supra. There, our Supreme Court held that the trial court did not err in giving a virtually identical instruction on inferences and circumstantial evidence. The defendant's claim in that case was the same as that made in the present case, namely, that the instruction diluted the standard of proof borne by the state. *State* v. *Silano,* supra.

The court held otherwise. "We do not perceive the same potential for confusion of the jury in the 'reasonable' and 'logical' language that we have found in the 'more probable than not' phrase. We note that three recent Appellate Court decisions have rejected claims that an instruction permitting a jury to draw 'reasonable and logical' inferences is improper. *State* v. *Widget,* [11 Conn. App. 47, 525 A.2d 548 (1987)]; *State* v. *Wylie,*

---

[5] The court charged the jury, with regard to inferences, as follows: "In passing upon the facts which you must find it is your duty first to consider all the evidence in this case bearing upon the issue presented and you may also draw such proper inferences from the facts as you may have found proved already and infer from those facts those conclusions which are reasonable and logical. If you find underlying facts have been proven, it's up to you and you alone to determine whether these underlying facts reasonably and logically lead to an inference or a conclusion of fact."

10 Conn. App. 683, 691–92, 525 A. 2d 528 (1987); *State* v. *Wright,* 9 Conn. App. 275, 280–82, 518 A.2d 658 (1986). 'The statement that inferences should be reasonable and logically drawn is not, in and of itself, erroneous. In fact, such an instruction, it has previously been recognized, is "entirely proper." *State* v. *Wright,* supra, 282; see *State* v. *Tatem,* 194 Conn. 594, 598, 483 A.2d 1087 (1984); D. Borden & L. Orland, Connecticut Criminal Jury Instructions § 2.5, pp. 43-44.' *State* v. *Wylie,* supra, 691." *State* v. *Silano,* supra, 774.

With regard to circumstantial evidence, the trial court in the present case expressly instructed the jury that "[w]hether or not to draw an inference or a conclusion of fact and whether it's proven beyond a reasonable doubt, as I've stated before, is entirely up to you." Cf. *State* v. *Wylie,* supra, 691–92.

There is no error.

In this opinion the other judges concurred.