STATE OF CONNECTICUT *v.* THOMAS MARTIN, JR.
(12797)

DUPONT, C. J., and LAVERY and HENNESSY, Js.

Argued April 19—decision released August 15, 1995

*Suzanne McAlpine,* with whom, on the brief, was *Hugh F. Keefe,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen J. Sedensky III,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from a judgment of conviction, after a trial to the court, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (4).[1] The defendant was sentenced to a term of ten years. On appeal, the defendant claims that (1) the trial court improperly allowed the state to offer constancy of accusation testimony, (2) the trial court improperly allowed admission of the victim's redacted clinic and hospital records under the hearsay exceptions for business records and statements made in securing medical treat-

---

[1] General Statutes § 53a-71 (a) provides in pertinent part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (4) such other person is less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare . . . ."

ment, (3) the trial court improperly allowed the victim's mother to testify as to the victim's mental state and school record under a nonassertive conduct exception to the hearsay rule, and (4) there was insufficient evidence to convict the defendant of any offense beyond a reasonable doubt.

The trial court found the following facts. At the time of the incident, the victim was living with her father and stepmother on her father's houseboat. She had been living with them for three years. On the date of the assault in this case, the victim's stepmother was in Vermont where she was about to have a baby. The victim had previously lived with her mother and stepfather in Florida. The victim had just completed her sophomore year in high school and was working for the summer.

On July 30, 1990, the defendant picked up the victim from her job, took her to dinner and returned to the boat with her. Upon returning to the boat, the victim helped the defendant fix the air conditioning. When the repairs were finished, the defendant went out and the victim watched television until approximately 10 p.m. and then went to sleep.

At approximately midnight, the defendant returned, came to the victim's room and asked her to help do more work on the air conditioning. The victim helped the defendant for approximately one hour. The defendant, who had been drinking, was unsteady on his feet and slurred his words. After helping her father, the victim returned to bed. The defendant entered her room and looked under her bed covers; he said she was not ready for bed because she was wearing shorts. He told her to come talk to him when she was ready for bed. He wanted to discuss whether she was to go on a date the following night.

When the victim went to her father's bedroom, as he had requested, he started talking to her about sex. After he told her to lay down on the bed, he talked to her about masturbation and inquired as to whether she knew the difference between a hard and soft penis. At this point, the defendant grabbed the victim's hand and placed it on his penis, instructing her to rub it. The victim told her father that she was uncomfortable with this conduct and went to her room.

Shortly thereafter, the defendant called the victim to the kitchen. He told her that he had been wrong and should not have talked to her that way. After going to his room, the defendant returned to the kitchen with a gun, which he pointed at the victim's head. He told her that if she told anyone, he would shoot her, and he ordered her to go to his bedroom.

Once they were in the defendant's bedroom, he told the victim to take off her clothes. She followed his instruction, but asked if she could keep her underwear on, the defendant said she could. He made the victim lie down on top of him on the bed and he moved his pelvic area up and down several times. The victim stood up. The defendant told the victim that she had the choice of performing fellatio or having sexual intercourse. The victim told her father that she did not want to do either, but the defendant told her that if she was not quiet that she would be in big trouble. The victim performed fellatio and then went to her bedroom. The victim heard her father yelling that he had ruined her life and how could he have done this to her.

On July 31, the victim's father gave her a ride to work. From there, the victim called her friend, Melissa Mancini, but Mancini was asleep. The victim called again later and spoke with Mancini. She told her friend that her father had forced her to perform fellatio. Mancini's mother, Giselle Doszpoj, got on the phone and

asked the victim what had happened. The victim told Doszpoj what had occurred and Doszpoj, who was a Bridgeport police officer, called the department of children and youth services (DCYS).

The victim spoke with Susie Laffitte at DCYS who told her to call the police. Doszpoj picked up the victim at work and brought her to Doszpoj's house where the victim gave the police a statement. Doszpoj called the victim's mother, Sharon Giersdorf, and told her what had happened. Giersdorf spoke briefly to the victim and then traveled to Connecticut from Florida the next day. Giersdorf and the victim returned to Florida where the victim has since resided.

I

First, the defendant claims that the constancy of accusation testimony offered by the state is highly prejudicial and requires that the case be reversed. This testimony consisted of statements made by the victim to Mancini and Doszpoj on the morning of the sexual assault. The state introduced a statement given by the victim to Bridgeport police detective A.M. Osika on the afternoon of August 1. The state also introduced redacted records of Savannas Hospital in Florida where the victim had voluntarily admitted herself because she was depressed. In addition, the state introduced redacted records of Psychiatric and Psychological Associates which consisted of statements the victim made to a treating physician concerning the sexual assault. The defendant claims that the assault never occurred and the only reason the victim accused him was because she no longer wanted to live with him and wanted to return to Florida. In addition to the victim's testimony concerning the assault and the constancy testimony, the state introduced testimony that refuted the defense theory that the victim's only purpose in making this accusation was to return to Florida.

## A

In June, 1994, our Supreme Court reaffirmed the admissibility of constancy of accusation testimony. *State* v. *Kelley*, 229 Conn. 557, 563–67, 643 A.2d 854 (1994). The genesis of this rule dates to 1830 when the court held: "If a female testifies, that such an outrage has been committed on her person, an enquiry is, at once, suggested, why it was not communicated to her female friends. To satisfy such inquiry, it is reasonable that she should be heard in her declarations, that she did so communicate it, and that testimony should be received to confirm her story." *State* v. *De Wolf*, 8 Conn. 93, 100 (1830). Since this case, the Supreme Court has consistently approved the admission of such evidence. See *State* v. *Kinney*, 44 Conn. 153, 156–57 (1876); see also *State* v. *Parris*, 219 Conn. 283, 289–90, 592 A.2d 943 (1991). In order for such testimony to be admissible, the complainant must first testify to the facts alleged and then state that she made this complaint to some other person. That person can then testify not only to the fact that a complaint was made, but also to the details. *State* v. *Segerberg*, 131 Conn. 546, 548–49, 41 A.2d 101 (1945).

The reason for the admission of such testimony is that it would be natural for the victim of a sexual assault to relate the incident to others. The recitation of the details would be likely to be constant if the claim was true and discrepancies would be more likely if the incident did not happen. *State* v. *Kelley*, supra, 229 Conn. 565–66. Here, this testimony was used only to corroborate the victim's testimony. *State* v. *Hamer*, 188 Conn. 562, 565, 452 A.2d 313 (1982). The defendant has failed to demonstrate any compelling reason to curtail the use of this doctrine. *State* v. *Parris*, supra, 219 Conn. 292. It is also important to note that not only does this testimony provide additional information on

which to cross-examine the victim, but the defendant can cross-examine the accusation witnesses as well. *State* v. *Dabkowski*, 199 Conn. 193, 202, 506 A.2d 118 (1986); *State* v. *Brigandi*, 186 Conn. 521, 533, 442 A.2d 927 (1982).

## B

The defendant claims that the constancy of accusation testimony violated his right of confrontation. The defendant's argument is based entirely on the United States Supreme Court decision in *Idaho* v. *Wright*, 497 U.S. 805, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990). The issue in *Wright* was the admission of hearsay statements of a child who the trial court ruled was not capable of communicating to the jury. The prosecution relied on Idaho's residual hearsay exception; the court then determined that under such an exception the trustworthiness of the statement must be established, which the prosecution could not do. Id., 817–27. The court pointed out, however, that the indicia of reliability requirement is met when the hearsay statement "falls within a firmly rooted hearsay exception." *Ohio* v. *Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). If the statement meets this exception then it is allowed into evidence as it also then meets the requirements of the confrontation clause. *Idaho* v. *Wright*, supra, 814; *Ohio* v. *Roberts*, supra, 65.

As stated in part I A, this exception to the hearsay rule has existed since 1830; *State* v. *De Wolf*, supra, 8 Conn. 93; and has "consistently been approved by this court." *State* v. *Kelley*, supra, 229 Conn. 565. The testimony in this case is a firmly rooted exception and, therefore, does not violate the confrontation clause.

The admissibility of the hospital records of the victim also involves an exception to the hearsay rule. This court has held that statements of a child abuse victim to a treating physician, although hearsay, carry with

them the indicia of reliability necessary to be admitted as evidence. *State* v. *Maldonado,* 13 Conn. App. 368, 371, 536 A.2d 600, cert. denied, 207 Conn. 808, 541 A.2d 1239 (1988); see also *State* v. *DePastino,* 228 Conn. 552, 638 A.2d 578 (1994). The reason for this exception is that an individual seeking medical treatment would be truthful, which gives such testimony the " 'guarantees of trustworthiness.' " *Idaho* v. *Wright,* supra, 497 U.S. 815; *Ohio* v. *Roberts,* supra, 448 U.S. 66. It must also be remembered that the victim had testified to these facts and was available for cross-examination.

## C

The defendant claims that his state and federal due process rights were violated by the introduction of the constancy of accusation evidence because it discriminates against accused sex offenders. The defendant seeks review of this claim under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding,* the defendant must meet four conditions to prevail in his claim. Id., 239–40. The defendant has failed to satisfy the third prong, that a constitutional violation clearly existed and deprived him of a fair trial. *State* v. *Smith,* 35 Conn. App. 51, 54, 644 A.2d 923 (1994).

This hearsay exception is limited to sexual assault trials because of the nature of the exception, not a policy decision of any state agency. The constancy of accusation exception to the hearsay rule is an evidentiary ruling long recognized by our courts and is applied to every sexual assault defendant regardless of race or gender.

The defendant claims that this exception rests on "hoary sexual stereotypes" and has "no empirical foundation." In *State* v. *Kelley,* supra, 229 Conn. 564–65, the defendant made this same argument and our Supreme Court held that this exception was not gen-

der biased. The court reasoned that "[b]ecause the doctrine would apply equally to male and female victims, we conclude that it is not gender biased and, therefore, does not violate article first, § 20, of the Connecticut constitution." Id., 565. As the defendant's claim cannot be differentiated from the claim in *Kelley*, and there is no constitutional violation, no further review of this claim is necessary.

## II

Second, the defendant claims that the admission of portions of the records from the clinic and hospital, under the business exception to the hearsay rule, was prejudicial to the defendant and lacked any indicia of reliability and truthfulness and, therefore, should have been excluded. The only portions of the records admitted were statements made by the victim in which she indicated that she had been sexually assaulted by her father, and opinions, by others, that she was suffering from psychological problems. The victim testified that she started seeing Ruth Bolton, a physician at the clinic, on August 10, and told her what had happened. She also told two other physicians that she had been sexually assaulted. She testified that in November or December she stopped working and going to school, slept day and night, and was in a deep depression. She voluntarily admitted herself to Savannas Hospital for one month.

This court in *State* v. *Maldonado*, supra, 13 Conn. App. 371, carved out an exception to the hearsay rule that allows into evidence statements of child abuse victims to a physician for the purpose of obtaining medical treatment. This court relied on the two part test employed in *United States* v. *Iron Shell*, 633 F.2d 77, 84 (8th Cir. 1980), first, was the declarant's motive consistent with obtaining medical treatment, and second, was it reasonable for the physician to rely on such infor-

mation. In the case at hand, from the testimony of the victim and her mother, it is clear that the victim was frightened, sad and confused when she arrived in Florida. From these facts the trier of fact could infer that the victim went to Bolton for treatment of depression and, therefore, these statements, which were made for the purposes of her treatment, were reliable.

The same analysis is appropriate for reviewing the admission of the hospital reports. The defendant argues that because this is not medical treatment, but rather psychological treatment, this exception does not apply. "If the sexual abuser is a member of the child victim's immediate household, it is reasonable for a physician to ascertain the identity of the abuser to prevent recurrences and to facilitate the treatment of psychological and physical injuries." *State* v. *Dollinger*, 20 Conn. App. 530, 535, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990). The victim demonstrated a desire to recover her mental health by seeing Bolton and her voluntary hospital admission; such action will restrain her from giving false statements. *Brown* v. *Blauvelt*, 152 Conn. 272, 275, 205 A.2d 773 (1964). Our Supreme Court adopted this reasoning in *State* v. *DePastino*, supra, 228 Conn. 552.

The defendant argues that the state's "obvious purpose" in introducing these records was to connect the victim's psychological problems to the sexual assault. The defendant fails to cite any portion of the record that would lend credence to this argument. The victim testified, without objection, that the reason she entered Savannas Hospital was for treatment of the depression caused by the assault.

### III

Third, the defendant claims that the trial court improperly allowed Giersdorf, the victim's mother, to testify as to the victim's mental state and school rec-

ord under a nonassertive conduct exception to the hearsay rule. The state introduced this evidence in response to the defendant's claim that the only reason the victim made this complaint was to be allowed to move to Florida. The defendant did this through his cross-examination of the state's witnesses and the direct examination of his witness. The defense witnesses portrayed the victim as being very unhappy living with her father. They further testified that immediately after the crime the victim seemed normal and happy; the opposite picture presented by the state. Before this evidence was introduced, the victim had testified to her basic conduct before and after the incident. Giersdorf was testifying as to her observations of the victim and the victim's demeanor upon their return to Florida. She testified that on July 30, she spoke with her daughter who was happy and spoke of the concert she had attended over the weekend. Giersdorf testified that in August the victim was frightened, sad, unhappy and confused; she had trouble sleeping at night and rarely left the house.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." *State* v. *Sauris*, 227 Conn. 389, 406, 631 A.2d 238 (1993). Here, this evidence was relevant to aid the trier in its determination as to the ultimate issue of whether a sexual assault had occurred. Evidence is relevant if it tends to support the conclusion for which it is offered, even, if only to a slight degree. *State* v. *Marra*, 222 Conn. 506, 521, 610 A.2d 1113 (1992). The defendant, by his cross-examination, in effect, opened the door to this line of questioning and cannot now object to the state's later questioning on the same subject. *State* v. *Hernandez*, 224 Conn. 196, 206, 618 A.2d 494 (1992).

"Nonassertive conduct such as running to hide, or shaking and trembling, is not hearsay." *State* v. *Thomas*, 205 Conn. 279, 285, 533 A.2d 553 (1987). Even

an out-of-court statement is not hearsay "if it is offered to illustrate circumstantially the declarant's then present state of mind." *State* v. *Blades*, 225 Conn. 609, 632, 626 A.2d 273 (1993). Here, the witness was relating her direct observations of a person from which the trier of fact could infer that person's state of mind.

The defendant relies on *State* v. *Vitale*, 197 Conn. 396, 405, 497 A.2d 956 (1985), for the proposition that such evidence is admissible only when no other explanation for such conduct is possible. In *Vitale*, the conduct sought to be introduced was silence in the face of accusation. The court held that while such evidence "may be admissible under the ancient maxim that 'silence gives consent' the inference of assent may be made only when no other explanation is equally consistent with silence." *State* v. *Harris*, 182 Conn. 220, 229, 438 A.2d 38 (1980), as quoted in *State* v. *Vitale*, supra, 405. In this case, the testimony consisted of direct observations by the witness to conduct that the actor had previously testified to.

In addition, the state attempted to introduce through Giersdorf the victim's report card from her junior year in high school in Florida. The defendant objected on the basis that the report card was improper hearsay and the trial court sustained the objection. The court then allowed Giersdorf to testify, however, from her own recollection concerning the grades on the report card as long as she did not refer to the actual document. The defendant renewed his objection, and the trial court overruled the objection. The defendant argues on appeal that Giersdorf's testimony concerning the victim's grades was improperly admitted under the nonassertive conduct exception to the hearsay rule. We agree. Unlike her testimony concerning the victim's moods and demeanor, which Giersdorf directly observed and did constitute nonassertive conduct on the part of the victim, the testimony concerning the

grades was not conduct directly observed by Giersdorf but rather was the subjective opinion of the victim's teachers regarding her academic performance. Although the admission of the testimony was improper, we conclude that it was cumulative to Giersdorf's properly admitted testimony concerning the victim's mental state. Since it is not likely that the erroneous admission affected the result in this case, we hold that it was not prejudicial and, therefore, harmless. *State* v. *Suckley*, 26 Conn. App. 65, 73, 597 A.2d 1285, cert. denied, 221 Conn. 901, 600 A.2d 1028 (1991).

## IV

Finally, the defendant claims that the evidence was insufficient to find him guilty of sexual assault in the second degree.[2] The defendant's argument is based on the fact that only the victim testified to the assault, and there was no physical, medical or forensic evidence to corroborate her claim. The defendant further asserts that there was more corroborating evidence for the defendant's claim that the assault never occurred. The defendant also points to the fact that the trier of fact found that the assault was accomplished through the father-daughter relationship and not by the threat or use of a gun which, the defendant claims, shows that the trier disbelieved a portion of the victim's testimony.

This court recently employed the traditional two part analysis in reviewing a sufficiency claim. *State* v. *Finley*, 34 Conn. App. 823, 826, 644 A.2d 371, cert. denied, 231 Conn. 927, 648 A.2d 880 (1994). The court must construe the evidence in a light most favorable to sustaining the verdict, and then determine from that evidence, and all the reasonable inferences that flow from it, whether the trier of fact could reasonably find that the defendant was guilty beyond a reasonable doubt. Id.; see also *State* v. *Ford*, 230 Conn. 686, 692, 646 A.2d

---

[2] The defendant was found guilty of violating General Statutes § 53a-71 (a) (4). See footnote 1.

147 (1994); *State* v. *Reddick*, 33 Conn. App. 311, 332, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994). "Findings of fact that are consistent with guilt are afforded great deference unless they are improbable and unconvincing." *State* v. *Gray*, 221 Conn. 713, 720, 607 A.2d 391, cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992). There is nothing in our criminal jurisprudence that mandates that the trier of fact accept the defendant's version of the events; rather the trier is free to juxtapose conflicting versions of events and determine which is more credible. *State* v. *Adams*, 225 Conn. 270, 278, 623 A.2d 42 (1993). It is the trier's exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. *State* v. *Hooks*, 30 Conn. App. 232, 239, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993). The trier of fact may accept or reject the testimony of any witness. *State* v. *Cooley*, 24 Conn. App. 489, 490, 589 A.2d 377, cert. denied, 219 Conn. 905, 593 A.2d 131 (1991). The trier can, as well, decide what—all, none, or some—of a witness' testimony to accept or reject. 5 Connecticut Practice, D. Borden & L. Orland, Criminal Jury Instructions (1986) § 32.

From a review of the testimony, as previously discussed, the trier of fact could find that the victim was sixteen years old at the time of the assault and that the actor was her father. The trier could also find that there was sexual intercourse. The elements of the crime of sexual assault in the second degree were present so that the court could have found that each was proven beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.