STATE OF CONNECTICUT *v.* GARY LEE ROGERS
(AC 16880)

Schaller, Spear and Sullivan, Js.

Argued November 30, 1998—officially released February 16, 1999

*Paul R. Kraus*, special public defender, for the appellant (defendant).

*Richard F. Jacobson*, supervisory assistant state's attorney, with whom, on the brief, was *John Smriga*, assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Gary Lee Rogers, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the second degree in violation of General Statutes § 53a-56.[1] On appeal, the defendant claims that the evidence presented at trial was insufficient to sustain his conviction. Specifically, the defendant claims that the evidence was insufficient to prove that he recklessly caused the death of the victim.[2] We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The incident that formed the basis of this conviction took place in an apartment building in Bridgeport where the victim, Angel Cruz, had lived for several years. The defendant, who had known the victim for thirty-five years, had been living with the victim in the victim's apartment for about one month because the defendant had been having marital problems. On cross-examination, the defendant testified that on February 20, 1996, the victim called the police with a robbery

[1] General Statutes § 53a-56 provides in relevant part: "(a) A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

[2] General Statutes § 53a-3 (13) provides: "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ."

report, and the police mistakenly arrested the defendant. He was released from jail on March 15, 1996. At about 5:20 p.m. on March 19, 1996, the victim was at his brother's apartment in the same complex when the defendant came and asked the victim to open his apartment for him. The victim at first refused the defendant's request but then consented. The victim let the defendant into his apartment and then went back to his brother's apartment for approximately twenty minutes and then returned to his own apartment.

According to the defendant's statement to the police on March 20, 1996, prior to the victim's entering the apartment, the defendant could hear him yelling and cursing in the hallway. When the victim entered his apartment, he was cursing and pointing his finger at the defendant. The defendant said to the victim, "Man, I didn't do nothing." As the defendant was walking away, the victim kept pushing him. The defendant went to the refrigerator, and the victim told him to close the door. The defendant then watched television, and the victim hit him. The defendant told the victim no one ever hit him except his mother. The defendant then picked up his vest and went to a chair near the window when he heard the victim pick up a vase. The defendant claims that the victim charged at him with the vase. He shook the victim so that the victim dropped the vase and, as he was pushed aside by the defendant, the victim went out the window. The victim died in a hospital two days after the incident. The victim weighed approximately 123 pounds, was five feet four inches tall and was fifty-one years old. The defendant weighed approximately 190 pounds, was five feet eleven inches tall and was forty-six years of age.

Harold Wayne Carver, the state's chief medical examiner, testified that the victim had sustained seven broken ribs and a broken pelvis and that the cause of death

was a blunt traumatic brain injury consistent with a fall from a second floor window onto a hard surface.

The defendant claims that he cut his finger trying to grab the victim's leg to prevent him from going out the window. The defendant testified, "I did not even have any thought of the window being there. I just did like this here and pulled him in front, just pulled him fast like that and that is why he went out the window. I had no intention of throwing Angel. I loved Angel all my life and still love him. I am very sorry, but I did not mean to hurt Angel." After the incident, the defendant left the apartment, walking past the victim's body without attempting to render any assistance. The defendant spent the night in an abandoned building. The next day he turned himself in and gave a statement to the police.

The victim's brother, Miguel Cruz, testified that about three or four weeks before the incident the defendant told him that he was going to hurt his brother—was going to punch him until he killed him. Miguel Cruz testified that afterwards the victim and the defendant became friends again.

The sole issue in this appeal is whether the evidence is sufficient to support a verdict that the defendant recklessly caused the death of the victim.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Torres*, 242 Conn. 485, 489, 698 A.2d 898 (1997). On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence.

We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty. Id. 490." (Internal quotation marks omitted.) *State* v. *Kondracki*, 51 Conn. App. 338, 342, 721 A.2d 567 (1998).

"We are guided by the well established principle that '[t]he trier of fact may accept or reject the testimony of any witness.' *State* v. *Martin*, 38 Conn. App. 731, 744, 663 A.2d 1078 (1995), cert. denied, 237 Conn. 921, 676 A.2d 1376, cert. denied, 519 U.S. 1044, 117 S. Ct. 617, 136 L. Ed. 2d 541 (1996). It is the trier of fact's 'exclusive province to weigh the conflicting evidence and determine the credibility of witnesses.' *State* v. *Hooks*, 30 Conn. App. 232, 239, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993). We give deference to the evidence and the reasonable inferences drawn therefrom that support the trial court's determination of guilt. *State* v. *Dukes*, 46 Conn. App. 684, 690, 700 A.2d 119 (1997)." *State* v. *Kondracki*, supra, 51 Conn. App., 342–43. Our review of the record and briefs indicates that the jury acted reasonably and rationally in its fact-finding function when it found that the defendant acted recklessly in this matter.

The judgment is affirmed.