## STATE OF CONNECTICUT *v.* HERIBERTO CRUZ
### (AC 18323)

Foti, Landau and Spallone, Js.

Argued December 13, 1999—officially released February 29, 2000

*Richard S. Cramer*, for the appellant (defendant).

*Mitchell S. Brody*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Anne Mahoney*, assistant state's attorney, for the appellee (state).

FOTI, J. The defendant, Heriberto Cruz, appeals from the judgments of conviction, rendered after a jury trial, of five counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),[1] and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1991) § 53-21,[2] from two cases consolidated for trial.[3] On appeal, the defendant claims that the trial court improperly allowed as evidence (1) testimony of a social worker under a hearsay exception, and (2) testimony of the victim that the defendant was a member of a street gang. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. The victim, A, was born on January 10, 1983. The defendant was the boyfriend of the victim's mother and lived in the family homes in Hartford and Manchester during the period of the criminal acts. The criminal acts occurred in A's home in Hartford between May 1, 1991, and April 30, 1993. Additional criminal acts of the defendant occurred between April 30 and December 16, 1993, at A's home in Manchester. Also living in these homes

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes (Rev. to 1991) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] In the first information, the defendant was charged with three counts of sexual assault in the first degree and one count of risk of injury to a child; in the second information, the charges against the defendant were two counts of sexual assault in the first degree and one count of risk of injury to a child.

with A and the defendant were A's mother, A's younger brother and A's younger sister, who was the daughter of the defendant.

After May, 1991, when A was in third grade and living with her family in Hartford, the defendant on several occasions performed cunnilingus on her and had her perform fellatio on him. The defendant told A that she should not tell her mother what occurred because her mother already knew.

After May 1, 1993, the family moved to Manchester, where, on several more occasions the defendant and A engaged in additional acts of oral and vaginal sex. The defendant also forced A to wear and remove various clothing belonging to her mother. A did not report these activities to her mother, stating that the defendant threatened her that because the defendant was a member of a gang he would hurt her if she complained.

The defendant stopped living with A's mother in December, 1993. In the summer of 1995, A told an older school friend that the defendant had raped her. The friend urged A to tell her mother, but she refused. She did, however, tell her mother on December 14, 1995.

A's mother then called Frederick Rau, an obstetrician-gynecologist who had been treating A, and asked for help. He arranged for A to be examined at Saint Francis Hospital and Medical Center and spoke personally to Dianne Edell, a social worker, who was the coordinator of the hospital's diagnosis center for child abuse and who evaluated complaints of sexual abuse. Edell began an interview with A on December 14 and completed it on December 22, 1995. A thought Edell was a physician and spoke freely to her. The latter session was videotaped while Detective Robert Nelson of the Hartford police department and Detective Russell Wood of the Manchester police department observed the interview through a one-way mirror. The detectives

never interviewed A, but did receive a videotape of Edell's interview.

At trial, Edell testified in detail as to what was told to her by A regarding her sexual encounters with the defendant in Hartford, including allegations of cunnilingus and fellatio that occurred on more than ten separate occasions. Edell testified that A had informed her that in Manchester, in addition to oral sex, the defendant had performed vaginal sex with her and made her model lingerie.

Rau began treating A in March, 1993, for abdominal pelvic pain, when A was ten years old. In response to his specific question to her as to whether she had been sexually abused, A categorically denied it. During all his examinations of A, Rau never found any redness of the vagina or any signs of cuts, abrasions or lesions in the area. He detected no evidence indicating that A was sexually abused and testified that A's hymen was intact.

On January 10, 1996, A was examined by Elaine Yordan, a pediatrician and associate director of the adolescent medicine section of Saint Francis Hospital and Medical Center's department of pediatrics and a member of the hospital's diagnostic program for child abuse. The examination neither proved nor disproved allegations of sexual abuse. Yordan had Rau's medical history of A but apparently made no use of it in her diagnosis and did not see the videotape of Edell's interview with A. At trial, A testified in detail as to the sexual activity that transpired between her and the defendant at the apartments in both Hartford and Manchester.

I

The defendant asserts that the trial court improperly admitted into evidence the testimony of Edell concerning the details of the offense and the identity of the defendant. We disagree.

"[A] trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Coleman*, 241 Conn. 784, 789, 699 A.2d 91 (1997).

In *State* v. *Troupe*, 237 Conn. 284, 304, 677 A.2d 917 (1996) (en banc), our Supreme Court modified the constancy of accusation doctrine so that the person to whom a sexual assault is reported may not testify as to the details of the assault to corroborate the complaint. In *Troupe*, however, the court made clear that its ruling "does not affect those cases in which the details of a sexual assault complaint are otherwise admissible" under the exceptions to the rule against hearsay. Id., 304 n.19.

In Connecticut, it is well settled that out-of-court statements made by a patient to a physician for the purposes of obtaining medical treatment are admissible under the treating physician exception to the hearsay rule. *State* v. *DePastino*, 228 Conn. 552, 565, 638 A.2d 578 (1994); *State* v. *Maldonado*, 13 Conn. App. 368, 371, 536 A.2d 600, cert. denied, 207 Conn. 808, 541 A.2d 1239 (1988). "Out-of-court statements made by a patient to a physician may be admitted into evidence if the declarant was seeking medical diagnosis or treatment, and the statements are reasonably pertinent to achieving these ends. *State* v. *Wood*, 208 Conn. 125, 134, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988). Statements concerning the cause of the injury or the identity of the person who caused the injury usually are not relevant to treatment and, therefore, are not admissible under the medical diagnosis and treatment exception to the hearsay rule. *State* v. *Dollinger*, 20 Conn. App. 530, 534, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990). However,

[i]n cases of sexual abuse in the home, hearsay statements made in the course of medical treatment which reveal the identity of the abuser, are reasonably pertinent to treatment and are admissible. *State* v. *Maldonado*, [supra, 374]. If the sexual abuser is a member of the child victim's immediate household, it is reasonable for a physician to ascertain the identity of the abuser to prevent recurrences and to facilitate the treatment of psychological and physical injuries. *State* v. *Dollinger*, supra, 535." (Internal quotation marks omitted.) *State* v. *DePastino*, supra, 565.

Our Supreme Court has extended the definition of treating physicians to include individuals involved in the treatment of psychological and emotional injuries. See *State* v. *Wood*, supra, 208 Conn. 134; *State* v. *Martin*, 38 Conn. App. 731, 739–40, 663 A.2d 1078 (1995), cert. denied, 237 Conn. 921, 676 A.2d 1376, cert. denied, 519 U.S. 1044, 117 S. Ct. 617, 136 L. Ed. 2d 541 (1996). Under the medical treatment exception to the hearsay rule, Connecticut has allowed into evidence statements to physicians, psychologists and psychiatrists made by patients for the purposes of obtaining medical treatment provided that (1) the declarant was seeking medical diagnosis or treatment, and (2) the statement was reasonably pertinent to these ends. *State* v. *Dollinger*, supra, 20 Conn. App. 534.

The witness here, Edell, was neither a physician nor a psychologist or a psychiatrist. The trial court extended the medical exception to the hearsay rule to Edell who was described as working at the hospital and in the chain of medical command. No evidence was presented indicating that any physician, psychiatrist or psychologist ever utilized Edell's interview of A.

The *Troupe* decision modified the constancy of accusation rule by allowing the witness to whom a sexual assault victim has reported to testify only with respect to the fact and timing of the victim's complaint. The

testimony regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. *State* v. *Troupe*, supra, 237 Conn. 304.

The modification advanced by our Supreme Court is precisely to make inadmissible such testimony as to the details of the crime as testified to by Edell. Unless her testimony, which is hearsay, qualifies under the treating physician's exception to the hearsay rule, it is inadmissible under *Troupe*.

While the treating physician's exception has been expanded to include psychiatrists and psychologists, it does not per se encompass social workers. *State* v. *Barile*, 54 Conn. App. 866, 870–73, 738 A.2d 709 (1999).[4] If, however, the statements by the victim are not made directly to a physician but to one who is in the chain of medical diagnosis or treatment, and the declarant's motive is consistent with the purpose of obtaining medical diagnosis or treatment, the evidence is admissible under the exception. See, e.g., *State* v. *Maldonado*, supra, 13 Conn. App. 374 n.3. In *Maldonado*, we concluded that "in cases of sexual abuse in the home, hearsay statements made in the course of medical treatment which reveal the identity of the abuser, are reasonably pertinent to treatment and are admissible." Id., 374. The fact that in that case the victim's nonverbal communications were made to a security guard, acting as an interpreter, and not directly to the treating physician, nor even in his presence, was of no consequence.[5]

---

[4] While we concluded in *Barile* that the social worker's testimony was inadmissible as an exception to the hearsay rule for statements made to an attending medical provider, we determined that it was admissible under the constancy of accusation doctrine, because it corroborated the victim's testimony and because there was no showing of substantial prejudice or injustice. *State* v. *Barile*, supra, 54 Conn. App. 873.

[5] We recognized in *Maldonado* that neither the state nor the defendant addressed this issue in their briefs; we also noted that the comments of the

The admissibility of hospital records also involves an exception to the hearsay rule; see id., 374 n.3; and statements of a child abuse victim to a treating physician carry the indicia of reliability necessary to be admitted as evidence. "The reason for this exception is that an individual seeking medical treatment would be truthful, which gives such testimony the guarantees of trustworthiness. *Idaho* v. *Wright*, [497 U.S. 805, 815, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990)]; *Ohio* v. *Roberts*, [448 U.S. 56, 66, 110 S. Ct. 2531, 65 L. Ed. 2d 597 (1980)]." (Internal quotation marks omitted.) *State* v. *Martin*, supra, 38 Conn. App. 731.

There is no question that the evidence presented determined that A thought she was talking to a physician and therefore was "seeking medical diagnosis or treatment." It is not unreasonable to also conclude that because Rau, A's treating physician, sent A and her mother to the hospital, specifically calling Edell whom he knew to be a social worker with advanced training in therapy and public health, and the coordinator for the hospital's diagnostic center for child abuse, that statements by A to Edell would be reasonably pertinent to future medical diagnosis or treatment. Under these particular circumstances, Edell was in the chain of medical diagnosis and treatment, and not solely because she was a social worker.

We conclude, therefore, that the trial court properly determined that A's complaint to Edell did not lack trustworthiness because A thought Edell was a physician, and that under the particular circumstances of this case as set forth previously, Edell was part of the chain utilized to elicit information for future medical

advisory committee on the Federal Rules of Evidence provides that to be admissible under this exception the statement need not have been made to a physician and that statements to hospital attendants, ambulance drivers or even members of the family ought to be included. *State* v. *Maldonado*, supra, 13 Conn. App. 374 n.3.

and psychological treatment. We conclude that the fact that no evidence was actually presented indicating that either Rau or Yordan used Edell's interviews for medical purposes is of no legal consequence. A's statement to Edell relating to the details of the sexual assaults and to the identity of the defendant are reasonably pertinent to the ends of medical diagnosis and treatment. Therefore the trial court properly allowed Edell's testimony under the treating physician exception to the hearsay rule.

## II

The defendant next claims that the trial court improperly allowed A to testify that she did not report these incidents of sexual abuse for over two years because she was afraid of him as she believed him to be a gang member. He alleges that the prejudicial effect of being characterized as a gang member was "incalculable" and "must have had a devastating impact on the jury."

The defendant does not claim that the testimony was inadmissible as hearsay, recognizing that it "is not hearsay . . . if it is offered to illustrate, circumstantially the declarant's then present state of mind, rather than to prove the truth of the matter asserted." *State* v. *Blades*, 225 Conn. 609, 632, 626 A.2d 273 (1993). The defendant argues that the trial court abused its discretion in allowing this evidence in that its prejudicial effect far outweighed its probative value. We disagree.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." *State* v. *Sauris*, 227 Conn. 389, 406, 631 A.2d 238 (1993). This evidence was relevant to aid the trier to determine why A had waited two years before reporting the crimes, an issue directly involving A's credibility. Evidence is relevant if it tends to support the conclusion for which it is offered, even if only to a slight degree. *State* v. *Marra*, 222 Conn. 506, 521, 610 A.2d 1113 (1992).

A's state of mind was evidence that was probative of that issue raised.

The defendant complains that "the prejudice suffered by the defendant was compounded by the court's failure to give a curative instruction." The transcript, however, indicates that counsel for the defendant specifically asked the trial court not to instruct on gang membership and failed to object to the absence of a limiting instruction. The defendant may not pursue one course of action at trial for tactical reasons and later on appeal argue that the path he rejected should now be open to him. *State* v. *Drakeford*, 202 Conn. 75, 81, 519 A.2d 1194 (1987).

The judgments are affirmed.

In this opinion the other judges concurred.