STATE OF CONNECTICUT *v.* JEFFREY R. WIENER
(AC 17213)

Schaller, Spear and Stoughton, Js.

Argued January 11—officially released June 13, 2000

*Alice M. Sexton*, with whom, on the brief, was *Jon L. Schoenhorn*, for the appellant (defendant).

*Rita M. Shair*, assistant state's attorney, with whom, on the brief, were *John Connelly*, state's attorney, *John Davenport*, assistant state's attorney, and Kevin Connolly, legal intern, for the appellee (state).

*Opinion*

STOUGHTON, J. The defendant, Jeffrey R. Wiener, appeals from the judgment of conviction, rendered after

a jury trial, of larceny in the second degree in violation of General Statutes § 53a-123.[1] On appeal, the defendant claims that the trial court improperly (1) denied him access to certain business records and thereby violated his rights to due process, confrontation, cross-examination and compulsory process, (2) allowed a defense witness to invoke his privilege against self-incrimination and thereby violated the defendant's rights to compulsory process and to present a defense, and (3) determined that there was sufficient evidence to sustain the conviction. We reject the defendant's claims and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At all relevant times, the defendant primarily was employed as a liquor salesman for Hartley & Parker, a liquor distributor. In September, 1993, he became a part-time employee of the Spirit Shop, a liquor store in Waterbury. The Spirit Shop was owned by the complainant, James A. DeRienzo, Jr., and was one of the stores that the defendant had called on as a salesman. At the Spirit Shop, the defendant's responsibilities at first were clerical, but were increased over time. At some point, the complainant gave the defendant the key to the store so that he could open it to receive deliveries in the morning and close it at night.

---

[1] General Statutes § 53a-123 (a) provides: "A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and: (1) The property consists of a motor vehicle, the value of which exceeds five thousand dollars, (2) the value of the property or service exceeds five thousand dollars, (3) the property, regardless of its nature or value, is taken from the person of another, (4) the property is obtained by defrauding a public community, and the value of such property is two thousand dollars or less, or (5) the property, regardless of its nature or value, is obtained by embezzlement, false pretenses or false promise and the victim of such larceny is sixty years of age or older or is blind or physically disabled, as defined in section 1-1f."

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

In May, June and August of 1995, the complainant met with his accountant, Dale C. Ciccarelli, to discuss cash flow problems at the Spirit Shop. In reviewing the store's sales and purchases information, Ciccarelli concluded that its gross profit was less than it should have been and suggested that someone was stealing inventory. This prompted the complainant to install a security camera in the store sometime prior to September 13, 1995.

When the complainant reviewed the security camera's tape for September 13, 1995, he saw that the defendant had entered the Spirit Shop at approximately 7:30 a.m., filled three cases with bottles of liquor and left with them. The complainant did not keep detailed records, but on the basis of his experience, he estimated the value of the liquor taken at $200.

The complainant videotaped approximately twelve similar events, and on October 11, 1995, he reported the thefts to the Waterbury police department. On October 13, 1995, two detectives conducted surveillance, and at approximately 7:30 a.m. saw the defendant take several bottles of liquor from the Spirit Shop in a shopping cart and put them in the trunk of his car. They followed the defendant as he drove to the Hartley & Parker parking lot in Stratford. There, at the request of the detectives, the defendant opened his trunk and the detectives seized five cases of assorted liquor. The detectives advised the defendant of his rights and took him to the Waterbury police department.

While at the Waterbury police department, the defendant signed a written, voluntary statement in which he admitted that he filled orders for other liquor stores on his route and *for* himself with the liquor he took from the Spirit Shop because *he* needed money. The defendant estimated that he had taken approximately $10,000

worth of liquor from the Spirit Shop at an average of $150 to $200 per week for each order.[2]

At trial, before any evidence was taken, the defendant caused to be served on the complainant a subpoena duces tecum, commanding him to produce income tax returns for the years 1990 through 1996, and various financial and accounting records and journals for the years 1993 through 1996. The defendant asserted that because the investigation began after the complainant's accountant had written a letter concerning losses for a three year period prior to 1995, the records from those prior years were needed to attack the complainant's credibility and to establish that any losses resulted from shoddy business practices that existed before the complainant hired the defendant. The complainant thereafter filed a motion to quash and to limit the scope of the subpoena, which the court ruled on before the jury began hearing evidence.

Because the prosecution alleged that the offense occurred in 1995, the court granted the motion to quash and limited the scope of the subpoena to the years 1994 and 1995, ruling that the financial history in prior years would raise collateral issues. After the court granted the complainant's motion to quash, the defendant moved to reargue and asked the court to reconsider its decision. The court granted the defendant's motion to reargue and denied his request to reconsider. Additional facts will be stated where necessary.

I

The defendant first claims that the court violated his rights to due process, confrontation, cross-examination

---

[2] At trial, the complainant testified that he could tell through his observations of the videotapes that the defendant had taken more than the $10,000 worth of liquor that he admitted to taking. According to the complainant's testimony, the defendant admitted that he had taken more than $10,000 worth of liquor once he had been confronted with this claim.

and compulsory process when it granted the complainant's motion to quash and limited the scope of the subpoena duces tecum. The defendant claims that the court's order violated his constitutional rights because it denied him access to certain tax and other financial records of the Spirit Shop for 1992, 1993 and 1996. We disagree.

"The sixth amendment right to compulsory process includes the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . *State* v. *Carter*, 228 Conn. 412, 422, 636 A.2d 821 (1994). Although we recognize that the right of a defendant to present a defense is subject to appropriate supervision by the trial court in accordance with established rules of procedure and evidence . . . we are also mindful that the fair opportunity to establish a defense is a fundamental element of due process . . . and that our rules should not be applied mechanistically so as to restrict unreasonably that important right. . . . Id., 426–27.

"Furthermore, [t]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . ." (Internal quotation marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 256–57, 745 A.2d 800 (2000). This right, however, "is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers* v. *Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). "The trial court, in its discretion, may impose limitations on the scope of cross-examination, as long as the defendant has been permitted sufficient cross-examination

to satisfy constitutional requirements." *State* v. *Oliver*, 41 Conn. App. 139, 144, 674 A.2d 1359, cert. denied, 237 Conn. 920, 676 A.2d 1374 (1996). "The confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination." (Internal quotation marks omitted.) *State* v. *Pratt*, 235 Conn. 595, 604–605, 669 A.2d 562 (1995). Only relevant evidence may be elicited and the right to cross-examine is subject to the duty of the court to exclude irrelevant evidence. Id.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." (Internal quotation marks omitted.) *State* v. *DeCaro*, supra, 252 Conn. 257.

"[T]he trial court has wide discretion to determine the relevance of evidence . . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . *State* v. *Sullivan*, 244 Conn. 640, 653, 712 A.2d 919 (1998). However, [w]hen defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . . *State* v. *Bova*, [240 Conn. 210, 236, 690 A.2d 1370 (1997)]. Similarly, the exclusion of evidence that provides the defendant a basis for cross-examination of the state's witnesses may give rise to a claim of denial of the defendant's right to confrontation." (Internal quotation marks omitted.) *State* v. *DeCaro*, supra, 252 Conn. 257–58. "The general rule is that restrictions on the

scope of cross-examination are within the sound discretion of the trial judge . . . but this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. . . . We must, therefore, conduct a two-step analysis, determining first whether the cross-examination permitted to defense counsel comported with sixth amendment standards . . . and second, whether the trial court abused its discretion in restricting the scope of that cross-examination. . . . The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Citations omitted; internal quotation marks omitted.) *State* v. *Reeves*, 57 Conn. App. 337, 346, 748 A.2d 357 (2000).

Before we address the merits of the defendant's claims, we must first address the state's assertion that the alleged due process and compulsory process violations are unpreserved, thereby precluding review by this court. As the defendant states in his reply brief, however, he preserved these claims in his motion for supplemental discovery when he cited the fourteenth amendment and, further, when he claimed that the subpoenaed documents were material to the preparation of his defense. His claims, therefore, were preserved in the trial court, and we will review them.

In his motion to reconsider the motion to quash, the defendant requested certain financial records for 1992, 1993 and 1996, in addition to the 1994 and 1995 records. In support of his request for the additional records, the defendant called Leonard M. Romaniello, a certified public accountant, who testified that the records the defendant requested were important for developing an analytical history of the Spirit Shop's business. The defendant claimed that he needed the earlier records to

test the complainant's credibility and to cross-examine him and his accountant effectively. The court denied the motion to reconsider after being informed that the prosecution intended to prove that the complainant had set up a videotape surveillance, that the tapes showed the defendant removing liquor from the Spirit Shop on a number of occasions and that the defendant had admitted taking $10,000 worth of liquor from the Spirit Shop.

At trial, the state offered evidence of the defendant being recorded on videotape taking bottles of liquor from the Spirit Shop. The state further offered evidence that he admitted taking and selling liquor several times a week, and that he admitted having taken liquor worth $10,000. His defense was that he had taken the bottles of liquor, but that the complainant knew it, that he was doing errands for the complainant and that he had not stolen the liquor. Financial records for the earlier years were not relevant to these claims.

The basis for the defendant's claim is that the complainant installed the video camera only because his accountant suggested that somebody was stealing from the Spirit Shop, and the accountant's advice was predicated on an examination of the store's financial records for 1993 through 1995. The defendant sought to show through the earlier records that any losses sustained by the Spirit Shop were due to shoddy business practices rather than theft.

First, the financial records from 1992, 1993 and 1996 would not have proved that the defendant did not commit larceny. Second, the defendant's ability to challenge the complainant's credibility and to expose his business practices was not abridged by the court's ruling limiting the scope of the subpoena. There was testimony from witnesses that the complainant had engaged in the

unlawful practice of bottle swapping[3] with other liquor stores, that he pocketed proceeds from cash sales with other liquor stores and that he paid employees in cash out of the Spirit Shop's register. The complainant testified that he had trouble paying bills and sometimes bounced checks. He denied bottle swapping, but admitted careless business practices, poor inventory control and financial difficulties. Thus, the defendant had ample opportunity to present his claim that the complainant lacked credibility and that any losses suffered by the Spirit Shop were due to something other than larceny.

We conclude that the defendant's sixth amendment rights were not violated. Furthermore, the court did not abuse its discretion when it granted the complainant's motion to quash and limited the scope of the subpoena because the records sought by the defendant would have raised collateral issues and, in any event, would have been cumulative of other evidence presented at trial.

II

The defendant next claims that the court improperly violated his right to present a defense and to compulsory process by allowing a witness to invoke his privilege against self-incrimination. We disagree.

The following additional facts are relevant to our resolution of this issue. The defendant called Robert M. Riccio, the owner of a Watertown liquor store, to testify on his behalf. Upon being asked certain questions by defense counsel, Riccio attempted to invoke his fifth amendment privilege against self-incrimination. Outside the presence of the jury, defense counsel asked

[3] As both parties have agreed, bottle swapping is a forbidden activity whereby retail liquor stores or bars swap liquor to obtain a bottle of a particular type of liquor of which they have sold out or which sells better. See General Statutes § 30-76. This practice is an unclassified misdemeanor under General Statutes § 30-113.

Riccio the questions he intended to ask in the presence of the jury. When asked whether he had done business with the distributor who employed the defendant, Riccio asked whether he could invoke his privilege against self-incrimination. The court asked to hear the rest of the questions. Defense counsel then asked the witness whether he had engaged in bottle swapping. Riccio did not respond, and, when asked why he had not responded, Riccio's counsel stated that he advised his client to invoke his privilege against self-incrimination. Defense counsel objected to the invocation of the privilege, claiming that without Riccio's testimony he would be unable to show that the complainant was involved in bottle swapping. The court, however, allowed Riccio to invoke his privilege.

"[F]or the trial court properly to refuse to recognize the privilege [against self-incrimination] when a witness invokes it, it must be perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken and that the answer[s] cannot possibly have . . . a tendency to incriminate." (Internal quotation marks omitted.) *State* v. *Erhardt*, 17 Conn. App. 359, 363–64, 553 A.2d 188 (1989). "To sustain the privilege, it need only be evident from the implications of the question, in the context in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. . . . Conversely, before refusing to allow the privilege, the trial court must find that the answers to any questions proposed cannot possibly have a tendency to incriminate. . . . The privilege against self-incrimination depends on the mere possibility of prosecution." (Citations omitted; internal quotation marks omitted.) *State* v. *Cecarelli*, 32 Conn. App. 811, 819, 631 A.2d 862 (1993).

The defendant claimed that the evidence he sought could not have exposed Riccio to prosecution for bottle

swapping because he intended to inquire about Riccio's bottle swapping in 1995 only and, at the time of the trial, the statute of limitations would have barred prosecution. The court, however, ruled that Riccio might, through his testimony, be exposed to prosecution for aiding and abetting a larceny. Furthermore, similar evidence was offered by other witnesses regarding the complainant's bottle swapping activities. The fact that the court allowed Riccio to invoke his privilege did not prevent the defendant from presenting evidence supporting his allegation that the complainant engaged in bottle swapping.

We conclude that the defendant's constitutional rights were not violated and that the court did not abuse its discretion in allowing Riccio to invoke his privilege against self-incrimination.

### III

The defendant's final claim is that the state presented insufficient evidence to support the larceny conviction. The defendant argues that the state failed to prove that he acted with the intent to deprive another of property, or to appropriate the same to himself and that the value of the property exceeded $5000, all of which are essential elements of larceny in the second degree. We disagree.

"In reviewing a sufficiency of the evidence claim, we must apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994). . . . *State* v. *Potts*, 55 Conn. App. 469, 471, 739 A.2d 1280, cert. denied, 252 Conn. 905, 743 A.2d 616 (1999).

"It is well settled that in reviewing a defendant's challenge to a verdict based on insufficient evidence, we defer to the jury. *State* v. *Brunori*, 22 Conn. App. 431, 434–35, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990). We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. *State* v. *Stepney*, 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). The scope of our factual inquiry on appeal is limited. This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . *State* v. *Hart*, 198 Conn. 424, 427, 503 A.2d 588 (1986). [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Young*, 56 Conn. App. 831, 835–36, 746 A.2d 795 (2000).

When determining that the defendant had the requisite intent for the crime, the jury reasonably could have relied on the defendant's statement to the police that he took the orders *for* himself from the other liquor stores because *he* needed the money. Furthermore, the jury heard testimony that the defendant had admitted to the complainant that he had taken more than the $10,000 worth of liquor, to which he previously had confessed, and that he told the complainant that all he wanted to do was make things right and pay back the money. Thus, a reasonable jury could find that the defendant had the requisite intent to commit larceny within the meaning of General Statutes § 53a-119, as is

required for a conviction of larceny in the second degree under § 53a-123 (a) (2).

Regarding the value of the stolen liquor, the jury reasonably could have believed the testimony by the complainant that the defendant had admitted taking property in excess of $10,000. Furthermore, the jury also could have believed the complainant's testimony that he reasonably could estimate the value of the property taken on the basis of his years of experience by simply observing the videotapes.

"That the jury might have drawn other possible inferences from these facts is not sufficient to undermine its verdict, since proof of guilt must be established beyond a reasonable doubt, not beyond a possible doubt. . . . [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citations omitted; internal quotation marks omitted.) *State* v. *Grant*, 219 Conn. 596, 604, 594 A.2d 459 (1991).

On the basis of the foregoing facts and the inferences reasonably drawn therefrom, we conclude that there was sufficient evidence presented from which the jury reasonably could have found that the defendant had the intent to deprive the complainant of his property, the value of which exceeded $5000.

The judgment is affirmed.

In this opinion the other judges concurred.