### STATE OF CONNECTICUT *v.* JOHN WILLIAMS
### (AC 19526)

Foti, Spear and Flynn, Js.

Argued June 11—officially released September 4, 2001

*G. Douglas Nash*, public defender, with whom were *Kelly D. Bryce* and *Kathleen G. Klenk*, certified legal interns, and, on the brief, *Pamela S. Nagy*, assistant public defender, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David J. Strollo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, John Williams, appeals from the judgment of conviction, rendered after a jury trial, of four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2)[1] and four counts of risk of injury to a child in violation of General

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

Statutes § 53-21.[2] On appeal, the defendant claims that the state failed to present sufficient evidence to prove beyond a reasonable doubt that he committed the separate crimes of sexual assault in the first degree by means of (1) cunnilingus and (2) penile and digital penetration of the victim's vagina.[3] The defendant also claims that the trial court improperly (1) restricted cross-examination, (2) admitted evidence as an exception to the hearsay rule, (3) admitted constancy of accusation testimony and (4) denied his motion for a mistrial because of claimed prosecutorial misconduct during closing argument. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim was born on November 30, 1991. In 1994, following her parents' separation, the court awarded custody of the victim to her father. Her mother, a chronic alcoholic, was hospitalized at the Connecticut Valley Hospital, a mental care institution, where she met and developed a relationship with the defendant, who also was a patient. Upon their release, they cohabitated in an apartment where, by agreement with the victim's father, the victim would visit three weekends a month and on certain holidays.

The apartment was a cramped, one bedroom apartment in which the victim's mother, the defendant, the

---

[2] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

[3] These claims involving the sufficiency of the evidence pertain to counts two, three and four of the information.

victim's two year old half-brother and her infant half-sister resided. The defendant's adult, divorced sister Denise, who worked nights, also temporarily roomed at the apartment. Further adding to the congestion were the regular weekend visits of the defendant's twelve year old son and eight year old daughter, who were the offspring of the defendant's union with his estranged wife. The living arrangements were, therefore, quite close at best, and the sleeping arrangements varied.

The victim's mother worked both day and night shifts as a waitress in a restaurant and, as a result, the defendant, who was unemployed, spent a considerable amount of time alone on the weekends with the five children. During the period commencing in October, 1996, and concluding on November 25, 1997, the defendant used these opportunities to subject the victim repeatedly to acts of sexual abuse. The defendant would wait until his children were playing outside, preoccupied with viewing television or playing video games, and then he would summon the victim to the bedroom, where the two younger children were sleeping, or to the bathroom. The defendant subjected the victim to repeated sexual acts, including vaginal intercourse, digital penetration, fellatio and cunnilingus. He also compelled her to masturbate him and at times he masturbated himself while standing over the victim, showering her with his ejaculate. The defendant, who the victim both disliked and feared, warned the victim to "keep it a secret" and not to tell anyone.

On November 23, 1997, after her father had picked her up at the end of her weekend visit, the victim blurted out that the defendant "makes me do sex," and pointed to her genital area and her mouth. The father notified the police and the state department of children and families (department) and took his child to the family pediatrician. The doctor advised him to have the child examined at the Yale-New Haven Child Sex Abuse Clinic

(Yale clinic). The victim's father scheduled an examination at the clinic.

On November 26, 1997, Meriden police detectives Jennifer Shelton and Gary Brandl interviewed the victim in the principal's office of her elementary school. They used a neutral, open-ended interviewing technique and, aided by anatomical cartoon drawings and a chart displaying various physiologically diverse phalli, they elicited from the victim the details of the abuse.

On December 3, 1997, Janet Murphy, a pediatric nurse practitioner, conducted a medical examination of the victim at the Yale clinic. This examination did not reveal any disease, injuries or physical abnormalities. During the examination, the victim told Murphy that the defendant had penetrated her vagina.

The victim testified at trial regarding the sexual abuse, the physical and physiological characteristics of the turgid penis and the mechanics of male orgasm and seminal ejaculation. John Leventhal, a physician and the prosecution's expert witness regarding child sexual abuse victims, testified that such knowledge was clearly unusual and wholly inappropriate for a child in the victim's age group. He also testified that, absent some other source of that knowledge, it supported the strong inference that the victim acquired such knowledge as a result of having been sexually abused. He also testified that delayed disclosure of sexual abuse by child victims was so common that it constituted the norm rather than the exception. Additional facts will be set forth as needed.

I

The defendant first claims that the evidence was insufficient to support his conviction of three counts of sexual assault in the first degree. We do not agree.

"The two part test for evaluating the sufficiency of the evidence in a jury trial is well established. First, the reviewing court construes the evidence presented at trial in a light most favorable to sustaining the verdict. . . . The reviewing court then determines whether the jury could have reasonably found, on the basis of the facts established and the inferences reasonably drawn from them, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . In conducting this review, the probative force of the evidence is not diminished where the evidence, in whole or in part, is circumstantial rather than direct." (Citations omitted.) *State* v. *Wager*, 32 Conn. App. 417, 429–30, 629 A.2d 1146, cert. denied, 228 Conn. 912, 635 A.2d 1231 (1993).

To convict a person of sexual assault in the first degree in violation of § 53a-70 (a) (2), the state must prove beyond a reasonable doubt that such person had sexual intercourse with a victim who was under the age of thirteen and that the perpetrator was more than two years older than the victim. General Statutes § 53a-65 (2) defines sexual intercourse as "vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. . . ."

A

The defendant claims that the state failed to prove beyond a reasonable doubt that he performed cunnilingus on the victim.

Penetration is not required for the commission of cunnilingus, which involves the use of the lips or tongue in the external or internal parts of the sex organs. See *State* v. *Kish*, 186 Conn. 757, 764–65, 443 A.2d 1274

(1982). The victim's testimony, her affirmative answers and the demonstrative evidence presented were sufficient, if accepted as credible, for the jury to have found proven beyond a reasonable doubt that the defendant placed his mouth on the victim's vagina.[4] The evidence presented at trial, along with the reasonable inferences drawn therefrom, was sufficient to support the jury's verdict as to count two.

## B

The defendant also claims that the evidence was insufficient to support his conviction for the crime of sexual assault in the first degree by digital and penile penetration of the victim's vagina. Specifically, he claims that the state failed to present sufficient evidence to prove penetration.

The victim testified that the defendant touched her in her private parts with "his fingers" and "his private part," and that her private part was in the "front one" where "the pee comes out of," which she called her "wee-wee." The victim also presented demonstrative evidence of the claimed abuse. Additionally, the state presented Murphy's testimony as to what the victim had told her and had physically demonstrated relative to the touching and her body.[5]

Accordingly, we conclude that the evidence presented was sufficient to support the conviction as to counts three and four.

---

[4] The defendant claims that the sole affirmative evidence presented that his mouth touched the victim's private part was elicited through a leading question. The defendant did not object to this question, and the answer elicited may be considered a fact found in the evidence presented. This unpreserved evidentiary claim is not properly part of the issue.

[5] The defendant again argues that the sole evidence "of anything being 'in' [the victim] came from the state's questioning, which . . . does not constitute evidence." This unpreserved evidentiary claim is not properly part of this issue. See footnote 4.

## II

The defendant next claims that the court improperly prevented him from eliciting from the victim's father reasons for his divorce from the victim's mother and the subsequent custodial arrangements. He claims that the court thereby violated his right of confrontation and prevented him from developing, through that witness, evidence of the victim's bias and motive falsely to accuse him.

The following facts are necessary to place the defendant's claim in its proper context. The victim openly testified during direct examination and again on cross-examination that she disliked and resented the defendant, was saddened by her parents' divorce and clung to the hope that her parents would reunite. She testified that she saw arguments between her mother and the defendant on a daily basis and that she knew that the defendant would be in trouble when she made her disclosures, and added that she was happy that she and her mother would never see the defendant again.

The victim's father testified that his marriage to the victim's mother was troubled, he sought the divorce, he was awarded custody of the victim, he had entered into a visitation agreement that permitted the victim to spend weekends with her mother and the defendant, and the divorce was finalized one month before the victim made her disclosures. He also indicated that the victim did not like the defendant because he was unkind and teased her.

When defense counsel attempted to ask him about whether the marital woes were caused by extramarital affairs, the court excluded such testimony on relevancy grounds; despite the defendant's argument that such inquiry was necessary to show the victim's state of mind and her bias and motive falsely to accuse the defendant.

Defense counsel was permitted to inquire as to the date and length of the divorce proceedings, and the attendant custody and visitation arrangements. Thereafter, defense counsel announced her intention to delve further into the "dynamics" of the divorce proceedings and the impact that they had on the victim to demonstrate the victim's "state of mind." The court ruled that defense counsel could explore how the victim reacted to the mechanics of the visitation arrangements. The court noted that defense counsel, during her cross-examination of the victim, already had amply explored her bias or motive. Fearing that the proposed line of inquiry would devolve into "a trial within a trial" and involve irrelevant matters, the court precluded defense counsel from further exploring the effects of the divorce "dynamics" on the victim.

The defendant called as his own witness his son, and the court permitted him to testify about the victim's jealousy and antipathy toward the defendant.

"[T]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . *State* v. *DeCaro*, 252 Conn. 229, 256–57, 745 A.2d 800 (2000). This right, however, is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. *Chambers* v. *Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). The trial court, in its discretion, may impose limitations on the scope of cross-examination, as long as the defendant has been permitted sufficient cross-examination to satisfy constitutional requirements. *State* v. *Oliver*, 41 Conn. App. 139, 144, 674 A.2d 1359, cert. denied, 237 Conn. 920, 676 A.2d 1374 (1996). The confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted

cross-examination. . . . *State* v. *Pratt*, 235 Conn. 595, 604–605, 669 A.2d 562 (1995). Only relevant evidence may be elicited and the right to cross-examine is subject to the duty of the court to exclude irrelevant evidence. Id." (Internal quotation marks omitted.) *State* v. *Wiener*, 58 Conn. App. 203, 208–209, 753 A.2d. 376 (2000), appeal dismissed, 256 Conn. 223, 772 A.2d 592 (2001).

"[T]he trial court has wide discretion to determine the relevance of evidence . . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . *State* v. *Sullivan*, 244 Conn. 640, 653, 712 A.2d 919 (1998). However, [w]hen defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . . *State* v. *Bova*, [240 Conn. 210, 236, 690 A.2d 1370 (1997)]. . . . *State* v. *DeCaro*, supra, 252 Conn. 257–58." (Internal quotation marks omitted.) *State* v. *Wiener*, supra, 58 Conn. App. 209. "The proffering party bears the burden of establishing the relevance of the offered testimony." *State* v. *Beliveau*, 237 Conn. 576, 586, 678 A.2d 924 (1996).

" 'In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial.' *State* v. *Roma*, 199 Conn. 110, 116, 505 A.2d 717 (1986)." *State* v. *Santiago*, 224 Conn. 325, 331, 618 A.2d 32 (1992).

"The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation

marks omitted.) *State* v. *Gaynor*, 182 Conn. 501, 509, 438 A.2d 749 (1980). To establish that the court abused its discretion, the defendant bears the burden of demonstrating that the restrictions that the court imposed on the cross-examination were clearly prejudicial. *State* v. *Castro*, 196 Conn. 421, 426, 493 A.2d 223 (1985). Once we conclude that the court's ruling on the scope of cross-examination is not constitutionally defective, we will apply every reasonable presumption in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. Id.

With these standards in mind, we conclude that the defendant's cross-examination of the witness satisfied constitutional requirements and that the court did not abuse its discretion in limiting the questioning as it did. A review of the record shows the defendant had ample time to cross-examine the witness and clearly elicited from him that the victim disliked the defendant. The defendant was allowed to cover the field of inquiry through the testimony of the victim herself, thus exposing to the jury the facts from which it could determine the victim's bias and motive falsely to accuse the defendant. We cannot, therefore, conclude that the court abused its discretion in restricting the scope of cross-examination of the victim's father as to irrelevant collateral matters, which were also at best cumulative of evidence elicited from the victim herself and at least one other witness, the defendant's son.

III

The defendant next claims that the court improperly permitted the testimony of Murphy, the nurse practitioner, because Murphy's testimony constituted hearsay, did not qualify for an exception and because it fell outside the parameters of the constancy of accusation doctrine as delineated in *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc). We disagree.

Two days after the victim disclosed the sexual abuse, the victim's father took her to her pediatrician to be examined. Her pediatrician told him that the Yale clinic was better suited to perform the examination, so he took the victim there. Neither the department nor the police scheduled that appointment with the Yale clinic. Murphy examined the victim at the Yale clinic.

The court allowed Murphy to testify about the victim's statements given during her examination. The court ruled that those statements were admissible for substantive purposes pursuant to the medical diagnosis or treatment exception to the hearsay rule.

Murphy testified that she examined the victim and that the primary purpose of the examination was for medical diagnosis and treatment, that is, to determine if the abuse had caused physical injury to the victim or had exposed her to sexually transmitted diseases. To determine which body parts to scrutinize and to obtain bacteriological cultures from, Murphy asked the victim to indicate where on her body the defendant had touched her. The victim "pointed inside the labial folds" and stated "in here," indicating a depth of penetration beyond the labial folds.

The defendant argued that Murphy's testimony was inadmissible because it did not fall within the ambit of any of the exceptions to the hearsay rule and because its admission would violate the constancy of accusation doctrine as defined by *Troupe*. He further argued that a department caseworker had scheduled the examination and that, therefore, the purpose of the examination was primarily investigative and not for medical diagnosis or treatment.

In *State* v. *Troupe*, supra, 237 Conn. 304, our Supreme Court modified the constancy of accusation doctrine so that the person to whom a sexual assault is reported may not testify as to the details of the assault to corrobo-

rate the complaint. In *Troupe*, however, the court made clear that its ruling "does not affect those cases in which the details of a sexual assault complaint are otherwise admissible" under the exceptions to the rule against hearsay. Id., 304 n.19. In the present case, the trial court admitted Murphy's statements under the medical diagnosis and treatment exception to the hearsay rule.

In Connecticut, it is well settled that out-of-court statements made by a patient to a physician for the purposes of obtaining medical diagnosis and treatment are admissible under the medical diagnosis and treatment exception to the hearsay rule. *State* v. *DePastino*, 228 Conn. 552, 565, 638 A.2d 578 (1994); *State* v. *Maldonado*, 13 Conn. App. 368, 371, 536 A.2d 600, cert. denied, 207 Conn. 808, 541 A.2d 1239 (1988). "Out-of-court statements made by a patient to a physician may be admitted into evidence if the declarant was seeking medical diagnosis or treatment, and the statements are reasonably pertinent to achieving these ends. *State* v. *Wood*, 208 Conn. 125, 134, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988). Statements concerning the cause of the injury or the identity of the person who caused the injury usually are not relevant to treatment and, therefore, are not admissible under the medical diagnosis and treatment exception to the hearsay rule. *State* v. *Dollinger*, 20 Conn. App. 530, 534, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990). However, [i]n cases of sexual abuse in the home, hearsay statements made in the course of medical treatment which reveal the identity of the abuser, are reasonably pertinent to treatment and are admissible. *State* v. *Maldonado*, [supra, 374]. If the sexual abuser is a member of the child victim's immediate household, it is reasonable for a physician to ascertain the identity of the abuser to prevent recurrences and to facilitate the treatment of psychological and physical injuries.

*State* v. *Dollinger*, supra, 535." (Internal quotation marks omitted.) *State* v. *DePastino*, supra, 565.

Our Supreme Court has extended the definition of treating physicians to include individuals involved in the treatment of psychological and emotional injuries. See *State* v. *Wood*, supra, 208 Conn. 134; *State* v. *Martin*, 38 Conn. App. 731, 739–40, 663 A.2d 1078 (1995), cert. denied, 237 Conn. 921, 676 A.2d 1376, cert. denied, 519 U.S. 1044, 117 S. Ct. 617, 136 L. Ed. 2d 541 (1996). Under the medical treatment exception to the hearsay rule, Connecticut has allowed into evidence statements to physicians, psychologists and psychiatrists made by patients for the purposes of obtaining medical treatment, provided that "(1) the declarant was seeking medical diagnosis or treatment, and (2) the statements are reasonably pertinent to these ends." *State* v. *Dollinger*, supra, 20 Conn. App. 534.

If "statements by the victim are not made directly to a physician but to one who is in the chain of medical diagnosis or treatment, and the declarant's motive is consistent with the purpose of obtaining medical diagnosis or treatment, the evidence is admissible under the [treating physician's] exception." *State* v. *Cruz*, 56 Conn. App. 763, 769, 746 A.2d 196, cert. granted on other grounds, 253 Conn. 901, 753 A.2d 938 (2000).

The record discloses that the victim's statement was necessary for the child's diagnosis and treatment to identify the parts of the body that might show signs of injury or disease. The primary purpose of the examination was to locate and to treat physical injuries and to determine whether the victim had contracted a sexually transmitted disease. Because the defendant was, under the circumstances disclosed, a member of the victim's immediate household, her statement identifying him was reasonably relevant to the victim's diagnosis and treatment.

We conclude that the court did not abuse its discretion in admitting the testimony under the medical diagnosis and treatment exception to the hearsay rule.

## IV

The defendant next claims that the court improperly allowed the constancy of accusation testimony of two witnesses, Murphy and Jennifer Shelton, a police detective, in violation of *Troupe.*

"It is well settled that the doctrine of constancy of accusation does not violate an accused's constitutional right to confrontation; *State* v. *Troupe,* [supra, 237 Conn. 290–91]; or to due process. *State* v. *Villanueva,* 44 Conn. App. 457, 460, 689 A.2d 1141, cert. denied, 240 Conn. 930, 693 A.2d 302 (1997). [A] person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. . . . Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported. In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant. *State* v. *Troupe,* supra, 304–305. [C]onstancy of accusation evidence is not admissible unless the victim has testified, and is subject to cross-examination, concerning the crime and the identity of the person or persons to whom the victim has reported the crime. . . . Id., 293. [W]hether evidence is admissible under

the constancy of accusation doctrine is an evidentiary question that will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . *State* v. *Beliveau*, [supra, 237 Conn. 592]." (Internal quotation marks omitted.) *State* v. *Cansler*, 54 Conn. App. 819, 824–25, 738 A.2d 1095 (1999).

The defendant alleges that the testimony of both Shelton and Murphy was used for substantive details about what allegedly occurred, rather than for any permissible corroborative purposes. The court permitted Murphy's testimony as an exception to the hearsay rule and not as constancy of accusation testimony. See part III of this opinion. The court permitted Shelton, over the defendant's objection, to testify that the victim disclosed to her that the defendant had subjected the victim to "oral" and "genital" "sexual abuse," and "sexual abuse involving masturbation." At that time, the court gave a limiting instruction to the jury to disregard Shelton's description of the victim's disclosure as "graphic" and added: "Now, the testimony of Detective Shelton is being offered under a theory called constancy of accusation, and it means that a witness is able to testify about an alleged report of sexual assault to that witness to corroborate the fact that—to corroborate that the complaint was made. So this witness was testifying not to—she's not testifying that, in fact, it happened, that, in fact, the child was sexually assaulted. She's testifying that the child told her that she was sexually assaulted."

The court also, in its final instructions to the jury, charged as to the weight to be given to the testimony of constancy witnesses and that the victim's statements were admitted to show "that she claimed that it happened and . . . to corroborate her testimony in court."

Under *Troupe*, the state is allowed to introduce any constancy of accusation testimony found necessary to

associate the victim's complaint with the pending charges. The various counts alleged sexual abuse in the form of cunnilingus, fellatio, digital and penile penetration of the vagina, and acts of masturbation. Shelton's testimony regarding the victim's statements fit within that allowable parameter, and, therefore, the court properly admitted such testimony. Additionally, the court specifically instructed the jury that it should use the testimony only to corroborate the victim's testimony. The defendant also has failed to show that "substantial prejudice or injustice" resulted from the admission of this evidence.

The defendant's claim is without merit. The court did not abuse its discretion in admitting Shelton's testimony as constancy of accusation evidence.

V

In his final claim, the defendant alleges that the court improperly denied his motion for a mistrial that was based on prosecutorial misconduct during closing argument and that such misconduct deprived him of a fair trial. We do not agree.

The defendant argues that the prosecutor "unfairly appealed to the emotions of the jury, vouched for the credibility of [the victim], made inferences about the defense attorney hiding facts and trying to distract the jury from the real issues of the case, and used the defendant's right to a jury trial against him."

"[A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . A determination of whether a mistrial is warranted is left to the sound judgment and discretion of the trial judge. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be

avoided." (Citations omitted; internal quotation marks omitted.) *State* v. *Wooten*, 227 Conn. 677, 693–94, 631 A.2d 271 (1993).

"When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial. . . . The trial court's ruling is entitled to weight because of the vantage point from which it can observe and evaluate the circumstances of the trial. The trial court is in a better position to determine the propriety of the remarks of counsel and whether . . . they are harmful. . . . [T]he trial court's determination that the prosecutor's remarks did not require a new trial must be afforded great weight." (Internal quotation marks omitted). *State* v. *Rivera*, 61 Conn. App. 763, 770, 765 A.2d 1240, cert. denied, 256 Conn. 901, 772 A.2d 599 (2001).

"Prosecutorial misconduct may occur in the course of closing argument and it may be so egregious that no curative instruction could reasonably be expected to remove its impact. *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987). However, [i]n analyzing the defendant's claim, we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . Id., 539–40.

"Moreover, our Supreme Court has considered several factors in assessing whether prosecutorial misconduct is so serious as to amount to a denial of due process. Id., 540. These factors include the extent to which the misconduct was invited by defense conduct

or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case. . . . Id.

"In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial. . . . In determining whether the defendant was denied a fair trial we must view the prosecutor's comments in the context of the entire trial. . . . *State* v. *Haskins*, 188 Conn. 432, 457, 450 A.2d 828 (1982)." (Internal quotation marks omitted.) *State* v. *Colon*, 52 Conn. App. 670, 674–75, 727 A.2d 796, cert. denied, 249 Conn. 905, 733 A.2d 224 (1999).

The following additional facts are relevant to our resolution of the defendant's claim. At the beginning of his closing remarks to the jury, the prosecutor stated: "Now, this case involves many brutal, violent and unpleasant facts. . . . The six year old . . . was the victim of horrible and repulsive crimes and she suffered this degradation at the hands of the defendant . . . . She was humiliated in the worst way imaginable." The defendant did not object, and we view the remarks as not improper in view of the evidence presented.

Shortly thereafter, the prosecutor argued that the jury had to decide whether the defendant was "guilty of molesting and raping" the victim. The court sustained the defendant's objection and ordered the state to restrict itself to the terminology contained in the charging document. The prosecutor continued using the terms "sexually assault" and "molest," to which there was no objection. While the state improperly used a term, rape, which raises an inference of force, an element not charged, we view the impropriety as not

severe under the circumstances. The court immediately corrected the prosecutor's misstatement, thereby minimizing its prejudice.

Thereafter the prosecutor, in commenting on the evidence that the defendant had sexually assaulted and molested the six year old child of his girlfriend, who lived in the same house as the defendant on weekends and who had not even reached puberty, stated that "[s]he was only six years old when this defendant stole her innocence from her forever. Now this defendant is trying to escape responsibility for his actions by denying the charges. The defense is trying to shift the blame onto the claims and to the believability of the state's witnesses."

The statements were made only during closing arguments and were not repeated during the course of the trial. As the challenged statements were not "a pervasive quality of the entire proceeding"; *State* v. *Rivera*, supra, 61 Conn. App. 774; the defendant has failed to meet his burden of proving that the statements deprived him of a fair trial. See *State* v. *Payne*, 63 Conn. App. 583, 592, 777 A.2d 731 (2001).

During final argument, when talking about the lack of resources to allow the taping of witnesses, the prosecutor stated: "If you'll notice the children, all three of them, you could barely see them all . . . because there's not a chair high enough in this courtroom for a child witness." The defendant objected, and the state agreed to move on to another point raised by defense counsel during closing argument. The court did not rule on the objection. The defendant further challenges other portions of the state's arguments during rebuttal. These challenged arguments appear to be in response to defense arguments during closing that directly questioned the victim's credibility and motivation.[6]

---

[6] The prosecutor commented that the jury should not punish the victim "for being more intelligent than the average seven year old," and should

In his final comment to the jury, the prosecutor stated: "I know that the oath each and every one of you took in this case is important to you . . . and the state knows you're going to carry out that oath and you're going to redress the wrongs committed against the victim . . . by this defendant." The court again sustained the defendant's objection.[7] The court then, before delivering its final instruction, gave a curative instruction as follows: "The court just wishes to state that it's not appropriate to say that the jury is to redress the wrongs done by [the defendant] on [the victim]. The jury's responsibility is to decide whether, in fact, [the victim] was abused, and, if so, whether this defendant abused her in accordance with the standards of the finding beyond a reasonable doubt."

We conclude that the court's curative instruction was sufficient to negate the prosecutor's improper remark. The inappropriate comment did not, therefore, deprive the defendant of a fair trial.

The defendant's final claim is that the prosecutor, together with appealing to the juror's emotions, injecting extraneous facts in his rebuttal argument and inflaming the jury's passions in closing argument, offered his personal opinion as to the victim's credibility. Our review of the record discloses that the prosecutor did not vouch for the victim's credibility, but rather made fair comment on the evidence presented, the argument of defense counsel and the victim's testimony and credibility in general.[8] The court, in its final instructions,

---

not be swayed by defense tactics. He also told the jury to "imagine what [being questioned at trial is] like for a six year old going on seven."

[7] The record discloses that defense counsel asked that the statement be stricken as inappropriate argument. The record does not disclose that the trial court acted on that motion.

[8] The defendant claims that "[t]he state also insinuated that . . . because he elected to have a jury trial, [he] had done something wrong." After reviewing the transcripts, we conclude that this claim is without merit.

directed the jury not to be influenced by prejudice, sympathy or passion, and stated that the arguments of counsel should not be considered as evidence in the case.

Viewed in light of all the evidence, even where the prosecutor's remarks were improper, the challenged statements did not substantially prejudice the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.